UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CLETUS JOHN ROBERT FRANKLIN, | ) | |
| | ) | Case No. 3:20-cv-515 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| DAVID B. RAUSCH, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court are Defendants Tennessee Department of Correction ("TDOC") Sex Offender Unit Officers James Sleeman and Laurie Wyatt's (collectively, "Officer Defendants") motion to dismiss (Doc. 70), Defendants Tennessee Attorney General Jonathan Skrmetti, TDOC Commissioner Lisa Helton,[1] and Tennessee Bureau of Investigation ("TBI") Director David B. Rausch's (collectively, "State Defendants") motion to dismiss (Doc. 81), and State Defendants' supplemental brief in support of their motion to dismiss (Doc. 84-1; *see* Doc. 86). Plaintiff Cletus John Robert Franklin did not respond to these motions, and the time for doing so has now

---

[1] The Complaint named Tony C. Parker, former TDOC Commissioner, and Herbert Slatery III, former Attorney General, as defendants in their official capacities. (Doc. 5, at 1.) Herbert Slatery III recently left office, and the Tennessee Supreme Court appointed Jonathan Skrmetti as his successor. *See Supreme Court Recognizes Attorney General Herbert Slatery for His Service to the State*, TNCOURTS.GOV (Aug. 31, 2022), https://www.tncourts.gov/press/2022/08/31/supreme-court-recognizes-attorney-general-herbert-slatery-his-service-state. Tony C. Parker recently retired as TDOC Commissioner, and Lisa Helton is currently the Interim Commissioner. *See Gov. Lee Appoints Lisa Helton as Tennessee Department of Correction Interim Commissioner*, TN.GOV (Nov. 29, 2021, 12:31 PM), https://www.tn.gov/governor/news/2021/11/29/gov--lee-appoints-lisa-helton-as-tennessee-department-of-correction-interim-commissioner.html. Under Federal Rule of Civil Procedure 25(d), a public officer's "successor is automatically substituted as a party."

passed. For the following reasons, the Court will **GRANT** Defendants' motions to dismiss (Docs. 70, 81, 84-1.)

I.  BACKGROUND

Plaintiff pleaded guilty to two counts of rape of a child and one count of rape on March 19, 2002, for offenses committed on May 4, 2001, and May 5, 2001, when he was eighteen-years old, against three boys. (Doc. 5, at 13–15.) Two of Plaintiff's victims were under thirteen-years old, and one victim was sixteen-years old. (*Id.* at 3.) Plaintiff was released from incarceration for these convictions to parole on October 12, 2018. (*Id.* at 3.) However, as a result of these convictions, he is subject to community supervision for life ("CSL"), pursuant to Tennessee Code Annotated § 39-13-524. (*Id.* at 13–15.) He is also designated a violent sex offender and must register on the Sex Offender Registry for life, pursuant to the Tennessee Sex Offender and Violent Sex Offender Registration, Verification, and Tracking Act of 2004, Tenn. Code Ann. § 40-39-201, *et seq*. ("SORVTA"). (*Id.* at 1.) Finally, Plaintiff is subject to various conditions of his parole, pursuant to the Tennessee Serious and Violent Sexual Offender Monitoring Pilot Project Act, Tenn. Code Ann. § 40-39-301, *et seq*. ("SOMPPA"). In the complaint, Plaintiff itemizes the conditions imposed on him under these statutes and other TDOC customs and policies, which include limitations of where he may reside, work, or remain, mandated meetings with officers, restrictions on his ability to attend religious services where children may be present and celebrate religious holidays, limitations on individuals with whom he may associate, prohibitions on possessing alcohol and pornography, and more. (Doc. 5, at 3–5.)

Officer Defendants have supervised Plaintiff's compliance with the terms of his parole and supervision since his release, and Plaintiff contends that certain actions taken by the Officer Defendants violated his constitutional rights. (*Id.* at 2.) In one incident, unbeknownst to

Plaintiff, the power on his statutorily-mandated ankle monitor fell below fifteen percent because the charger had malfunctioned, and the monitor does not have a power gauge to verify that it charged properly. (*Id.* at 6.) At the time, Plaintiff was working at Cheddar's Scratch Kitchen as a line cook and was not allowed to use his phone while working. (*Id.*) Due to the low battery and phone policy, Officer Wyatt called Plaintiff's managers and threatened to send the TBI and local law enforcement if Plaintiff did not call her in ten minutes. (*Id.*) After this incident, Plaintiff was fired. (*Id.*) Officer Wyatt has also required Plaintiff to meet with her on weekday mornings to change GPS units. (*Id.* at 7.) These mandatory meetings have made it impossible for Plaintiff to keep a first-shift job, further limiting his employment opportunities. (*Id.*) In another incident, Plaintiff texted Officer Wyatt to request permission to travel to Kentucky with his mother to see his aunt, who was on her deathbed. (*Id.* at 5.) Officer Wyatt ignored the text, effectively denying the request. (*Id.*)

At other times, Officer Sleeman required Plaintiff to destroy and dispose of his smartphone and return his Roku smart television because the devices could access the internet. (*Id.* at 6–7.) During this time, Plaintiff had difficulty finding prepaid flip phones and had to go business to business on foot while homeless to find and keep employment or be in violation of his parole conditions. (*Id.* at 7.) Then, during the COVID-19 pandemic, despite the previous removals of his smart devices, Officer Defendants required Plaintiff to attend online Sex Offender Treatment. (*Id.*) Officer Sleeman has also informed Plaintiff that he is prohibited from attending any religious gatherings where minors are present. (*Id.*) Plaintiff is a sincere Asatruar, a follower of a sect of Odinism, also known as "Heathenism," that worships the Norse Gods. (*Id.*) Plaintiff represents that an Asatruaran cannot be a solitary practitioner; rather, group worship is mandatory. (*Id.*)

On September 9, 2019, a grand jury indicted Plaintiff in state court for violations of SORVTA and CSL ("the 2019 charges"), and he pled guilty to those charges on April 28, 2020. (Doc. 84-2, at 2–3.) Plaintiff initiated the present action on December 7, 2020. (*See* Doc. 1.) On July 12, 2021, while this case was pending, Plaintiff filed a petition for post-conviction relief on the 2019 charges in state court. (*See* Doc. 84-4, at 2.) As a result of Plaintiff's petition, the state court set aside his convictions and reinstated the 2019 charges. (*Id.*) As of April 2022, this state-court proceeding remained pending, and neither party has notified the Court that the proceeding since concluded. (*See* Doc. 84-5.)

In the operative complaint, Plaintiff alleges that SORVTA, SOMPPA, CSL, and additional TDOC policies and/or the personal practices of Officer Defendants violate various constitutional provisions, namely, the Ex Post Facto Clause, the Bill of Attainder Clause, the Cruel and Unusual Punishment Clause, the due process right to work, the due process right to form intimate associations with family and religious adherents, the due process right to travel, the First Amendment right to free exercise of his religious beliefs, the First Amendment right to engage in anonymous activities online, the due process protection of plea agreements, the due process protection from imposition of criminal liability without actual knowledge, the due process protection from statutes that are void for vagueness, and the due process protection from impossibility. (Doc. 5, at 9–10.)

Officer Defendants filed their motion to dismiss on December 29, 2021, State Defendants filed their motion to dismiss on February 22, 2022, State Defendants filed a motion for leave to file a supplemental brief in support of their motion to dismiss on March 23, 2022, and State Defendants filed an additional notice regarding Plaintiff's nonresponse on August 11, 2022. (Docs. 70, 81, 84, 85.) Plaintiff did not respond to or oppose any of these motions or the notice,

4
Case 3:20-cv-00515-TRM-DCP   Document 87   Filed 09/14/22   Page 4 of 16   PageID #: 524

despite many intervening months to do so. Plaintiff did not make any other filings in the intervening time, either. Therefore, on August 18, 2022, the Court issued an order for Plaintiff to show cause as to why his claims against Defendants should not be dismissed for waiver of opposition under Local Rule 7.2 and failure to prosecute his claims under Federal Rule of Civil Procedure 41(b) (Doc. 86). This order explicitly put Plaintiff on notice that the Court was considering summary dismissal for his lack of opposition if he did not timely file a response. (*Id.*) The Court also provided a September 2, 2022 deadline for such a response. (*Id.*) That deadline has now passed, and Plaintiff did not respond to the Court's order to show cause. The motions are ripe for the Court's review.

## II. DISCUSSION

### A. Failure to Prosecute and Waiver

Pursuant to Local Rule 7.2, "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2; *see also Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.") Nevertheless, the Sixth Circuit held in *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991), "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." 946 F.2d at 455. "The court is required, at a minimum, to examine the movant's motion for summary judgment [or motion to dismiss] to ensure that he has discharged [his] burden" under Federal Rules of Civil Procedure 56(c) or 12(b), even when the court's local rules would permit it to dismiss a plaintiff's action merely for failing to respond. *Id.*

More recently, the Sixth Circuit has held that *Carver* does not preclude Courts from granting unopposed motions to dismiss simply because the complaint adequately states valid causes of action. *Green v. City of Southfield, Michigan*, 759 F. App'x 410, 417 (6th Cir. 2018) (citing *Carver*, 946 F.2d at 455). Rather, "*Carver* simply instructs that where the adverse party has not responded to a motion to dismiss, the district court must consider the evidence presented and make a determination accordingly." *Id.* (citing *Carver*, 946 F.2d at 455). In *Green*, the Sixth Circuit held that the district court did not abuse its discretion by granting the defendants' motion to dismiss where the court issued an order to show cause for failure to respond and the court duly considered the plaintiff's arguments in her response to the order to show cause. *Id.*

The Court may dismiss a case for failure to prosecute under Federal Rule of Civil Procedure 41(b), but the Court does not have authority under this rule to dismiss a plaintiff's action "*merely* for failing to respond to another party's motion." *Carver*, 946 F.2d at 454 (emphasis added). "[I]n *absence of notice* that dismissal is contemplated a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct.'" *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988) (emphasis added).

Unlike in *Carver*, in this case, the Court explicitly provided notice to Plaintiff that it was considering summary dismissal of his claims for failure to prosecute and an opportunity to respond. (*See* Doc. 86.) And unlike the parties in either *Carver* or *Green*, Plaintiff has raised no arguments, at any point before or after the order to show cause, against dismissal for failure to oppose the motions to dismiss. *See Carver*, 946 F.2d at 453–55; *Green,* 759 F. App'x at 417. Therefore, the Court finds that dismissal pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute is appropriate in this case.

### B. Motions to Dismiss

Even if dismissal pursuant to Rule 41(b) were not warranted under these circumstances, the Court would still grant the Defendants' unopposed motions to dismiss, considering the Defendants' burdens under Rule 12 and the allegations in the complaint, as instructed by *Carver* and *Green*.

#### i. *Officer Defendants' Motion*

##### a. Standard of Review

According to Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The doctrine of qualified immunity "shields governmental officials from monetary damages as long as their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (internal quotation marks omitted). "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable [state actor] would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). In assessing a plaintiff's allegations, "[t]he first step is to determine if the facts alleged make out a violation of a constitutional right." *Id*. The second step "is to determine if the right at issue was 'clearly established' when the event occurred" such that a reasonable state actor would have known his conduct violated that constitutional right. *Id*. These steps may be addressed in any order, but, if either step is answered in the negative, qualified immunity shields the state actor from civil damages. *Id*.

8

Case 3:20-cv-00515-TRM-DCP   Document 87   Filed 09/14/22   Page 8 of 16   PageID #: 528

"Ultimately, the plaintiff bears the burden of showing that [a state actor] is not entitled to the defense of qualified immunity." *Id*. The Court notes, however, that while the qualified-immunity inquiry is a threshold question that "should be resolved as early in the litigation as possible," the United States Court of Appeals for the Sixth Circuit has cautioned that such inquiries are more appropriate for resolution on a motion for summary judgment and that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Id*. (internal quotations and citations omitted).

      b.    <u>Analysis</u>

The actions of Officer Defendants that Plaintiff challenges are: (1) Officer Wyatt calling Plaintiff's managers at Cheddar's Scratch Kitchen and threatening to send law enforcement if Plaintiff did not call her regarding low battery on his ankle monitor, (2) Officer Wyatt requiring Plaintiff to meet with her on weekday mornings, (3) Office Wyatt failing to respond to a text message request for Plaintiff to travel to Kentucky, (4) Officer Sleeman requiring Plaintiff get rid of his smartphone and smart television, (5) Officer Sleeman informing Plaintiff that he is prohibited from attending religious gatherings where minors are present, and (6) Officer Defendants requiring Plaintiff to attend Sex Offender Treatment over the internet during the COVID-19 pandemic despite removing his smart devices. (Doc. 5, at 6–7.) "Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating the defendant is not entitled to qualified immunity." *Winter v. City of Westlake*, No. 1:16CV1753, 2018 WL 838283, at *3 (N.D. Ohio Feb. 13, 2018) (citing *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011)). In this case, Plaintiff has not met his burden to demonstrate that Officer Defendants are not entitled to qualified immunity.

9
Case 3:20-cv-00515-TRM-DCP   Document 87   Filed 09/14/22   Page 9 of 16   PageID #: 529

Plaintiff generally alleges that Officer Defendants' actions violate his eighth amendment right to be free from cruel and unusual punishment, his due process rights "to work and earn a living" and "travel outside Sevier County," and his first amendment rights "to family life," to "gather with other Asatruar," and to "engage in any internet activities." (Doc. 5, at 9–10.) Plaintiff does not allege that his rights to be free from the actions Officer Defendants took were clearly established, or, more precisely, that the contours of these rights were "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted) (citation omitted). The Supreme Court has instructed courts not to define "clearly established right" at a high level of generality; rather, the dispositive question is whether the violative nature of the particular *conduct* has been clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Plaintiffs need not cite a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741.

Due to his to nonresponse to the motion to dismiss, Plaintiff cites no existing precedent that would put Officer Defendants on notice that these actions violated Plaintiff's rights, and he makes no allegation as to how or why Officer Defendants should have known these actions violated his rights. (*See generally* Doc. 5.) Indeed, the contours of the rights afforded to parolees, such as Plaintiff, remain largely undefined and *unclear*: "by virtue of their status alone, probationers do not enjoy the absolute liberty to which every citizen is entitled." *Samson v. California*, 547 U.S. 843, 848–49 (2006) (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)); *see also United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990) ("On the Court's 'continuum of possible punishments,' parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers." (quoting *Griffin v. Wisconsin*,

483 U.S. 868, 874 (1987))); *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972) ("The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.").

Therefore, Plaintiff has not met his burden of demonstrating that Officer Defendants are not entitled to qualified immunity. *See Winter*, 2018 WL 838283, at *3 (citing *Rodriguez*, 637 F.3d at 689). While the Sixth Circuit cautions that determinations of qualified immunity are better suited for summary judgment than motions to dismiss, the circumstances in this case warrant dismissal at this stage because Plaintiff responded neither to Officer Defendants' motion to dismiss, nor to the Court's order for Plaintiff to show cause for failure to respond, thereby failing to prosecute and waiving his opposition to the application of qualified immunity in this case. *See* E.D. Tenn. L.R. 7.2; *Courtright*, 839 F.3d at 518. Accordingly, the Court will **GRANT** Officer Defendants' motion to dismiss (Doc. 70).

    *ii.*    *State Defendants' Motion*

        a.    <u>Habeas Corpus</u>

Plaintiff challenges the constitutionality of the terms of his parole imposed on him by CSL, SOMPPA, and various unspecified TDOC rules and policies. (Doc. 5, at 1–3.) Habeas corpus "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release," and therefore, claims challenging conditions of confinement are not cognizable under 42 U.S.C. § 1983. *Heck v. Humphrey*, 512 U.S. 477, 481 (1994). Plaintiff challenges the constitutionality of the statutes and rules imposing the conditions of his parole, which is a form of confinement, so his claims are also only cognizable in habeas corpus. *See Jones v. Cunningham,* 371 U.S. 236, 242–43 (1963) (parole conditions place a paroled prisoner in "custody" for habeas purposes); *Holson v. Good*, 579 F.

App'x 363, 365 (6th Cir. 2014) (holding that *Heck* barred the plaintiffs from bringing claims under § 1983 that challenged conditions of their parole when the challenges to such conditions would result in release from confinement (citing 512 U.S. at 487)). Therefore, to the extent Plaintiff's § 1983 claims challenge the length and terms of his parole, under CSL, SOMPPA, and TDOC policy, his claims will be **DISMISSED WITHOUT PREJUDICE**. *See Justice v. Pickell*, No. CIV.A. 05-74882-DT, 2006 WL 212020, at *2 (E.D. Mich. Jan. 27, 2006) ("When a civil rights complaint is defective and appears to assert claims for which the exclusive remedy is habeas corpus, a district court should state that the claims must be addressed in a habeas petition and should dismiss the civil rights claims without prejudice.") (citing *Trimble v. City of Santa Rosa*, 49 F.3d 583, 586 (9th Cir. 1995)).

    b. <u>Statute of Limitations</u>

Plaintiff alleges that the state is violating the terms of his plea agreement by requiring him to comply with SORVTA for life. (Doc. 5, at 10.) Plaintiff raises this argument as a due-process claim pursuant to 42 U.S.C. § 1983. (Doc. 5, at 1.) "The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Therefore, Plaintiff's claim is subject to a one-year statute of limitations under Tennessee law. *Id.*; Tenn. Code Ann. § 28-3-104(a)(1).

This limitations period begins to run either when the plaintiff "'has a complete and present cause of action' that can be raised in court," or "when the plaintiff discovered (or should have discovered) the cause of action." *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (declining to rule on which approach is correct) (quoting *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019)). Courts considering challenges to SORVTA have found

12
Case 3:20-cv-00515-TRM-DCP   Document 87   Filed 09/14/22   Page 12 of 16   PageID #: 532

that, where a plaintiff's claims arise from the original imposition of SORVTA's conditions on him—including claims that the act violated the terms of a plea agreement—the statute of limitations period begins to run when SORVTA takes effect against him. *Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *1 (E.D. Tenn. Apr. 25, 2018); *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *14 (M.D. Tenn. Nov. 9, 2017); *Jackson v. Rausch*, No. 3:19-CV-377, 2021 WL 4302769, at *3–4 (E.D. Tenn. Sept. 21, 2021).

SORVTA first took effect against Plaintiff on October 12, 2018, and he admits he knew at that time he would have to register for life. (Doc. 5, at 3.) Plaintiff did not file this action until December 7, 2020—more than one year after the act's requirements were imposed against him. (Doc. 1.) Therefore, Plaintiff's due-process claim that the SORVTA requirements violated his plea agreement is barred by the statute of limitations. Accordingly, this claim is **DISMISSED WITH PREJUDICE**.

    c.  <u>Abstention</u>

Finally, State Defendants argue that the Court should abstain from hearing the remainder of Plaintiff's claims—challenges to the constitutionality of SORVTA and CSL under various provisions—pursuant to the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971). (Doc. 84-1.) Under the *Younger* doctrine, "when state proceedings are pending, principles of federalism dictate that the constitutional claims should be raised and decided in state court without interference by federal courts." *Doscher v. Menifee Cir. Ct.*, 75 Fed. App'x 996, 997 (6th Cir. 2003). For *Younger* abstention to apply: "(1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceeding to raise constitutional challenges." *Id.*

(citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995).

"[The Sixth Circuit] has also noted that 'the application of the *Younger* rule is much more than the mechanical application of these considerations.'" *Air Evac EMS, Inc. v. Robinson*, 486 F. Supp. 2d 713, 718 (M.D. Tenn. 2007) (quoting *Zalman v. Armstrong*, 802 F.2d 199, 201–02 (6th Cir. 1986) (reminding courts to be sensitive to the "concerns which animate [the *Younger*] rule, e.g., equity, comity and federalism")). "The underlying concern of *Younger* is the 'threat to our federal system posed by displacement of state courts by those of the National Government.'" *Doe v. Lee*, No. 3:20-CV-00610, 2020 WL 4926607, at *3 (M.D. Tenn. Aug. 21, 2020) [hereinafter "*Doe 610*"] (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)). Therefore, "*Younger* abstention requires the federal court to defer to the state proceeding." *Id.* (quoting *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006)).

Further, "[a] district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007) (quoting *Coles*, 448 F.3d at 866). Dismissal is appropriate if a party is seeking injunctive relief and is not seeking damages. *Doe 610*, No. 2020 WL 4926607, at *7.

In this case, all three *Younger* conditions are met. First, there are state criminal charges against Plaintiff for violations of SORVTA and CSL which were filed before this lawsuit and which, to this Court's knowledge, remain pending before Sevier County Circuit Court. (*See* Docs. 84-2–84-5.) Second, this state proceeding involves an important state interest, namely, enforcement of the state's criminal code. *See Doe 610*, 2020 WL 4926607, at *7 ("[I]t is axiomatic that state criminal proceedings involve important state interests"); *Sims v. McCarter*,

14
Case 3:20-cv-00515-TRM-DCP   Document 87   Filed 09/14/22   Page 14 of 16   PageID #: 534

No. 3:18-CV-0072, 2018 WL 1138537, at *2 (M.D. Tenn. Mar. 2, 2018) ("*Younger* established a near-absolute restraint rule when there are pending state criminal proceedings.[] For this reason 'a federal court should be loath to assume jurisdiction to interfere with state criminal proceedings, including postconviction proceedings . . . .'" (quoting *Parker v. Turner*, 626 F.2d 1, 8 (6th Cir. 1980); *Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011))). Third, the state criminal proceeding will provide Plaintiff with adequate opportunity to raise constitutional challenges to the statutes under which he is charged. *Sims*, 2018 WL 1138537, at *3 (collecting cases demonstrating that Tennessee criminal proceedings provide adequate opportunity to raise constitutional challenges).

Finally, the Court finds that the concerns animating *Younger* militate strongly in favor of this Court's abstention. The Supreme Court cautioned that the concerns underlying *Younger* stand for the proposition that "absent extraordinary circumstances, . . . federal courts [must] refrain from enjoining pending state criminal prosecutions." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 351 (1989). Plaintiff has made no showing of such extraordinary circumstances to justify a federal court interfering with the state's prosecution of Plaintiff. *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 435 ("So long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."). Indeed, Plaintiff did not respond to State Defendants' motion invoking *Younger* abstention. It would violate the principles of comity and equity for this Court to wrench jurisdiction away from the state court to decide constitutional claims made by a party who has not even opposed their dismissal.

Because Defendant seeks injunctive relief on his constitutional claims and is not seeking damages (Doc. 5, at 10–11), dismissal without prejudice under *Younger* is more appropriate than holding Defendant's claims in abeyance. *See Doe 610*, No. 2020 WL 4926607, at *7. For these reasons, the Court will **ABSTAIN** from hearing Plaintiff's constitutional challenges to SORVTA and CSL[2] and **GRANT** State Defendants' motion to dismiss (Docs. 81, 84-1).

### III. CONCLUSION

For these reasons, the Court hereby **GRANTS** Defendants' motions to dismiss and **ABSTAINS** from hearing Plaintiff's constitutional challenges to SORVTA and CSL. (Docs. 70, 81, 84-1.) Plaintiff's claims against Officer Defendants and his due-process claim that SORVTA violated his plea agreement are **DISMISSED WITH PREJUDICE**. Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[2] State Defendants raise additional arguments, unrelated to abstention, as to why some of these claims should be dismissed. (*See* Doc. 82.) Because the Court's findings on the applicability of habeas corpus, the statute of limitations, and abstention dispose of all the claims in this case, the Court will not consider these additional arguments. *See supra* Section II.B.ii.